IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BRUCE A. ROBISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10-CV-3224 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff Bruce A. Robison appeals from the denial of his application for Social Security Disability Insurance Benefits and Supplemental Security Income (collectively "Disability Benefits") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c. This appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Robison has filed a Motion for Summary Judgment (d/e 15), and Defendant Commissioner of Social Security has filed a Memorandum in Support of Motion for Summary Affirmance (d/e 17). The parties consented, pursuant to 28 U.S.C. § 636(c), to have this matter proceed before this Court. <u>Consent to Proceed Before a United States Magistrate Judge, and Order of Reference entered January 31, 2011 (d/e 13)</u>. For the reasons set forth below, the decision of the Commissioner is affirmed.

STATEMENT OF FACTS

Robison was born on March 1, 1958.  He completed high school and a year of college.  Answer to Complaint (d/e 9), attached Certified Transcript of Proceedings Before the Social Security Commission (R.), at 37.  He previously worked as an industrial cleaner, farm worker, landscape laborer, store laborer, and production worker.  R. 54.  He suffers from degenerative disc disease and related conditions in his back and chronic obstructive pulmonary disease (COPD).  R. 12.  He alleged that he became disabled on June 1, 2005.  He subsequently amended his alleged onset date to March 1, 2008.  R. 10, 36.  He last worked in December 2007.  R. 37.

Robison filed a claim for Disability Benefits on February 8, 2006.  In April 2006, Robison indicated in a Social Security Disability Report that he had trouble breathing; pain in his back when walking, lifting or getting up or down; and exhaustion and loss of energy.  He stated that it took great effort to complete daily tasks and personal needs.  R. 115.[1]

On May 6, 2006, he completed a Social Security Administration questionnaire entitled, "Function Report – Adult."  R. 160-68.  Robison indicated that the pain affected his sleep.  R. 162.  Robison also reported

---

[1] The Disability Report is not dated, but appears to be part of the reports generated at a field office interview on April 21, 2006.  R. 100-26, R. 113.

that he could not do much because he was out of breath and tired. R. 166.

On June 6, 2006, a state agency physician, Dr. Gary Cromer, M.D., reviewed Robison's medical records. Dr. Cromer noted that Robison had been diagnosed with COPD and has a history of frequent episodes of bronchitis and upper respiratory infections. R. 367. Robison had reduced peak intake flows in October 2005, March 2006, and April 2006. These reduced intake flows, however, occurred when Robison had bronchitis or upper respiratory infections. Dr. Cromer concluded that there was insufficient evidence to assess whether a pulmonary function study was warranted, or, if not, what Robison's residual functional capacity (RFC) would be. R. 367.

On July 27, 2006, Robison was examined at the Marion, Illinois, Veterans' Administration Hospital (VA Hospital). R. 383. During the examination, Robison had a positive straight leg test bilaterally and positive Patrick's test. Robison also had focal tenderness in the lumbar area and kyphoscoliosis dorsal spine with flexion stiffness. R. 389. X-rays of Robison's spine taken in July 2006 showed degenerative disc disease in the L4-L5 level of the spine and mild posterior subfluxation at the same level. R. 373. X-rays of Robison's chest indicated pulmonary emphysema and bilateral pulmonary scarring. R. 375.

On July 28, 2006, Robison completed a report of daily activities. R.189-98. Robison lived at his mother's home at the time. His mother prepared his meals. He did the dusting and yard work, took out the trash, and fed their pet. R. 190. Robison stated that his back hurt occasionally when he got dressed or arose from bed. R. 191. He experienced shortness of breath, pain, and fatigue after lifting bags of groceries or baskets of laundry. R. 195. He also said that when he took out the trash or did yard work, his back started hurting, he got short of breath, and he suffered from fatigue. R. 196.

On August 31, 2006, state agency physician Dr. Barry Free, M.D., completed an RFC assessment. R. 398-405. Dr. Free opined that Robison could perform tasks at the medium exertional level of frequently carrying 25 pounds and occasionally carrying 50 pounds. R. 399. See 20 C.F.R. 416.96(c) (definition of medium work). Dr. Free opined that Robison could stand, walk and sit for six hours in an eight-hour workday. R. 399. Dr. Free stated that Robison could frequently balance and occasionally: (1) climb ramps, stairs, ladders, ropes, and scaffolds; (2) stoop; (3) kneel; (4) crouch; and (5) crawl. Dr. Free also opined that Robison should avoid concentrated exposure to fumes, odors, gases and poor ventilation. R. 402.

Robison went back to work on September 11, 2006. R. 202. He worked as a fork lift operator and then a production worker. R. 37, 52-53, 202. This type of work is rated at the medium exertional level. R. 54-55. Robison was fired in December 2007 because he came to work with alcohol on his breath. R. 37. He looked for work after that, but was unsuccessful. In 2008, he decided to get an attorney and see whether at his age he could qualify for disability. R. 39.

Robison returned to the VA Hospital on May 21, 2008. X-rays showed extensive obstructive pulmonary disease, with asymmetric infiltrates/consolidation in his left perihilar region and lingular segment left upper lobe, most likely inflammatory. R. 409, 464.

On October 14, 2008, Dr. Stephen Gerber, M.D., answered medical interrogatories concerning Robison's restrictions, based on a review of the medical evidence. R. 406. Dr. Gerber stated that Robison had been diagnosed with hepatitis C, mild degenerative disc disease of the lumbar spine, and COPD. Dr. Gerber opined that Robison's impairments did not meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 407. Dr. Gerber further opined that Robison could lift 20 pounds frequently and 50 pounds occasionally; could stand, walk and sit for six hours in an eight-hour workday; could occasionally perform all postural activities; and should never be subject to

concentrated exposure to dust, fumes, gases, and temperature extremes. R. 408.

On March 4, 2009, a doctor from the VA Hospital completed a physical RFC questionnaire. He stated that Robison had been diagnosed with low back pain, COPD, and hyperlipidemia. R. 472. The doctor opined that Robison could perform sedentary work, lift up to 10 pounds occasionally, lift and carry small items, stand and walk for two hours in an eight-hour workday. R. 473. The doctor opined that Robison should never bend, twist, stoop, climb, crouch, crawl, but could occasionally kneel. R. 475. The doctor opined that Robison would need to lie down or recline periodically throughout the day. R. 474. The doctor also stated that Robison had full use of his hands and fingers. R. 476.

The Administrative Law Judge (ALJ) conducted an evidentiary hearing on March 6, 2009. R. 27-61. Robison appeared by telephone. Robison was also incarcerated at the time of the hearing. R. 32. Robison's attorney appeared in person. R. 29. Medical experts Dr. Martin Wolf, M.D. and Dr. Lace, M.D., also appeared, as well as vocational expert Dr. Gregory Jones, Ph.D.[2] Robison testified that he stopped working in

---

[2]The hearing transcript does not contain Dr. Lace's first name. Robison indicates in his memorandum that Dr. Lace's first name is Michael. Robison also states that Dr. Wolf's last name is spelled Wolfe. Plaintiff's Memorandum in Support of his Motion for Summary Judgment (d/e 16), at 3.

December 2007, when he was fired because he came to work with alcohol on his breath.  R. 37.  Robison testified that he had a problem with drinking. R. 37-38.  He testified that he stopped drinking because he had no money. R. 40.

In early 2008, Robison lived by himself in an apartment in Steelville, Illinois.  He did odd jobs for the landlord, such as painting walls, mowing the lawn, or trimming bushes, in lieu of rent.  R. 38-39.  Robison testified that he worked for the landlord a few hours a day, one day a week.  R. 41. Robison testified that he could not work for more than a couple of hours at a time because of his back and because the pollen would get to him. R. 41.  Robison explained,

> You know, just like what do you call it, the allergies.  You know, pollen and stuff like that getting into my lungs from trimming bushes up and stuff like that.  Doing out – just like grass, even cut grass, you know, bothers my breathing.

R. 41.  After working a couple of hours, Robison would go to his apartment, use his inhaler, and rest or eat.  He would try to go back to work, but sometimes he could not.  R. 42.

After about four months, the landlord made Robison move because Robison was not doing enough work to cover the rent.  R. 41-42.  Robison then moved in with a friend.  R. 41.  Robison tried to find work, but was

unsuccessful. He testified that his lungs were getting worse, so he decided to "get an attorney and see about getting my disability." R. 39.

Robison testified that some time in the past he had a pinched nerve in his back that caused pain to radiate through his legs,

> Now, I also, you know, there's been times, you know, I fell and I pinched nerves in my back that shut down my leg, too. Doctors has looked at my leg until they finally realized it is my back that was – because I couldn't hardly walk.

R. 44. Robison also testified that he had hand surgery in the 1990s, and had fractured his leg in the past. The leg fracture required a cast, but no surgery. R. 44.

Dr. Wolf then testified. Dr. Wolf had reviewed Robison's medical records. He opined that Robison could lift 10 pounds frequently and 20 pounds occasionally; could stand or walk two hours at a time and a maximum of four hours in an eight-hour workday; sit for six hours in an eight-hour workday; would have limitations in his ability to push, pull, or operate foot controls; could occasionally climb stairs and ramps; could occasionally stoop, kneel, crouch, and crawl; but could never climb ropes, ladders, or scaffolds. Dr. Wolf also opined that Robison should be subject to concentrated exposure to chemicals or fumes, and should not work around hazardous machinery or at excessive heights. R. 46-47.

Dr. Lace then testified. Dr. Lace opined that Robison had no serious mental health impairments. R. 49-50.

The vocational expert, Dr. Jones, then testified. The ALJ asked Dr. Jones to assume a person with the same age, education and work background as Robison and with all the limitations that Dr. Wolf identified. R. 55-56. The ALJ asked whether such a person would be able to perform any jobs in the national economy. Dr. Jones opined that such a person could perform the jobs of information clerk, parking lot cashier, and bench assembler. Dr. Jones opined that 70,000 information clerk jobs existed in the national economy, 30,000 parking lot cashier jobs existed in the national economy, and 12,000 bench assembler jobs existed in the national economy. R. 55. On cross examination, Dr. Jones opined that less than 100 of each of these three jobs existed in the southern Illinois area where Robison lived. R. 56.

## THE DECISION OF THE ALJ

The ALJ issued her opinion on August 6, 2009. R. 10-18. The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires that the claimant not be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c).

If true, Step 3 requires a determination of whether the claimant is so severely impaired that he is disabled regardless of the claimant's age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). The Listings set forth the severe impairments that render a claimant disabled at Step 3. The claimant's condition must meet the criteria in a Listing or be equal to the criteria in a Listing. 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not so severely impaired, then Step 4 requires the claimant not to be able to return to his prior work considering his RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant cannot return to his prior work, then Step 5 requires a determination of whether the claimant is disabled considering his RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. Knight v. Chater, 55 F.3d 309, 313 (7th Cir. 1995); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir. 1995).

The ALJ found that Robison met his burden at Steps 1 and 2 of the Analysis. He was not engaged in substantial gainful activity and he had

severe impairments in the form of degenerative disc disease of the lumbar spine and COPD. R. 12. At Step 3, the ALJ found that Robison's condition did not meet the level of severity set forth in any Listing.

At Step 4, the ALJ first determined Robison's RFC. She found that Robison had the RFC to perform light work subject to certain additional limitations. The ALJ determined that Robison was limited to standing continuously for two hours, and standing for a total of four hours in an eight-hour workday; and to occasionally pushing/pulling, climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. The ALJ further found that Robison should not be exposed to concentrated levels of hazardous chemicals, fumes, dust; excessive cold, heat and wetness; hazardous machinery; and heights. R. 15. In making this finding, the ALJ credited Dr. Wolf's opinions over the opinions of Dr. Free, Dr. Gerber and the doctors at the VA Hospital.

The ALJ also addressed Robison's statements regarding his symptoms in determining his RFC. The ALJ stated that she, "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." R. 16. The ALJ further stated that, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the

undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record." R. 16.

The ALJ found that the medical evidence was, "insufficient to show totally disabling physical or mental limitations." R. 16. The ALJ found that the fact that Robison had not sought treatment was, "probative as to the severity of his symptoms." R. 16. The ALJ then explained why she found Dr. Wolf's opinions to be superior to the other medical opinions in the record. The ALJ concluded her explanation of the RFC with the statement, "Claimant's complaints are accommodated for to the extent they comport with the objective medical record." R. 16.

The ALJ then found that Robison could not perform his past work. All of Robison's past work was rated at either the medium or heavy exertional level.     R. 17.

The ALJ found at Step 5 that Robison could perform a substantial number of jobs in the national economy. The ALJ relied on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and Dr. Jones' opinion that Robison could perform the jobs of information clerk, parking lot cashier, and bench assembler. R. 17. The ALJ, thus, found that Robison was not disabled.

Robison appealed the ALJ's decision to the Appeals Council. The Appeals Council denied Robison's request for review on Jun 28, 2010. R. 2. Robison then filed this action for judicial review.

ANALYSIS

This Court reviews the ALJ's Decision to determine whether it is supported by substantial evidence. In making this review, the Court considers the evidence that was before the ALJ. Wolfe v. Shalala, 997 F.2d 321, 322 n.3 (7th Cir. 1993). Substantial evidence is, "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the ALJ's findings if they are supported by substantial evidence, and may not substitute its judgment for that of the ALJ. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). The ALJ further must articulate at least minimally his analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The Court must be able to "track" the analysis to determine whether the ALJ considered all the important evidence. Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

The ALJ's decision is supported by substantial evidence. The medical opinions of Robison's exertional limitations range from sedentary to medium. The ALJ's finding that Robison could work at the light exertional level is, thus, consistent with this range of medical opinion.

The ALJ's findings of Robison's non-exertional limitations are also consistent with the medical evidence. The medical opinions were all fairly consistent about Robison's positional limitations and his need to not be exposed to concentrated levels of fumes, dust, and odors. These findings support the ALJ's decision that Robison did not meet a Listing at Step 3 and the ALJ's determination of Robison's RFC at Step 4.

The ALJ could reasonably discount Robison's statements in 2006 about the severity of his limitations. Robison stated in 2006 that he experienced pain, loss of breath and fatigue when he dusted, did yard work, and took out the trash at his mother's home. Robison, however, worked from September 2006 to December 2007, at the medium exertional level. The fact that he could work for over a year and a half at the medium exertional level supports the inference that his symptoms in 2006 were not that severe. The statements were also remote in time to his amended alleged onset date of March 1, 2008.

Robison's testimony at the 2008 hearing was substantially consistent with the ALJ's determination of his RFC. Robison was able to live alone in 2008. There is no evidence that anyone assisted him with his daily needs. Robison testified that in 2008 he could paint walls, mow grass, and trim bushes for about two hours at a time. He then had to use his inhaler and rest. Robison elaborated on his answer, explaining that the problem was

"allergies." R. 41. He testified that the pollen from the bushes and the new mown grass caused him such breathing problems that he had to stop. R. 41. Based on Robison's testimony, the ALJ cold reasonably conclude that his inability to work more than two hours was caused by his exposure to airborne irritants. The ALJ addressed that limitation in Robison's RFC when she determined that Robison should not be exposed to concentrated levels of hazardous chemicals, fumes, and dust. R. 15.

Robison did not give any other detailed testimony about the severity of back pain and COPD. Robison mentioned that he experienced a pinched nerve in his back sometime in the past that kept him from walking, but he gave no indication that he currently had any difficulty walking. He also mentioned a fractured hand and a broken leg in his past, but did not indicate that the fractures affected his ability to work. Taken as a whole, Robison's testimony was substantially consistent with the ALJ's determination that Robison could perform light work subject to the additional limitations set forth in her RFC determination.

Given the RFC determination, the ALJ's findings at Steps 4 and 5 were also supported by substantial evidence. The ALJ's findings that Robison could not perform his past relevant work was supported by his testimony regarding his past work and the ratings of those jobs as medium or heavy work. The ALJ's finding that Robison could perform a substantial

number of jobs in the national economy was supported by Dr. Jones' opinion that could work as an information clerk, parking lot cashier, and bench assembler. Dr. Jones opined that 112,000 such jobs exist in the national economy.

Robison argues that the ALJ erred at Step 5 because Dr. Jones stated that in southern Illinois where Robison lived there were less than 100 of each of the three jobs identified. The issue at Step 5 is whether the claimant can perform a substantial number of jobs that exist in the national economy. 20 C.F.R. § 404.156(c). The number of jobs in the claimant's immediate vicinity is not the relevant inquiry. 20 C.F.R. § 416.966. The evidence that Robison could perform 112,000 jobs that exist in the national economy is sufficient to support a finding at Step 5 that he is not disabled. See e.g., Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir. 2009) (noting that as few as 174 jobs has been held to be significant for purposes of Step 5).

Robison also argues that the ALJ erred by failing to make a proper credibility determination regarding Robison's testimony. The Court agrees that the ALJ erred, but finds that the error was harmless. The ALJ must make a finding regarding the credibility of the claimant's testimony. 20 C.F.R. 404.1529(c)(4); SSR 96-7. The ALJ did not make such a determination. The ALJ discussed whether Robison's symptoms were

consistent with objective medical evidence, but she did not directly address the credibility of Robison's testimony. The error was harmless in this case because, as set forth above, Robison's testimony regarding his daily activities and his ability to work was substantially consistent with ALJ's determination of his RFC. Robison's RFC, combined with his age, education, and work experience, supported Dr. Jones' opinion that Robison could perform a substantial number of jobs in the national economy. The error, therefore, was harmless.

Lastly, Robison criticizes the ALJ for stating that the medical evidence was insufficient to show totally disabling limitations particularly due to Robison's lack of treatment. The Court sees no reversible error in this comment. The medical evidence, particularly the opinions of Drs. Wolf, Free, and Gerber, do not show totally disabling limitations. Rather, the opinions of those doctors support the ALJ's decision. Those medical opinions constitute substantial evidence that supports the ALJ's decision. Any comment about the significance of the lack of treatment was again harmless in light of the record as a whole.

WHEREFORE, Plaintiff's Motion for Summary Judgment (d/e 15) is DENIED, and the Commissioner's request for summary affirmance is

ALLOWED. The decision of the Commissioner is affirmed. All pending motions are denied as moot. THIS CASE IS CLOSED.

ENTER: May 18, 2011

                     *s/ Byron G. Cudmore*
                     BYRON G. CUDMORE
                UNITED STATES MAGISTRATE JUDGE